AO 91 (Rev. 11/11) Criminal Complaint

CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

6/5/20
JULIA C. DUDLEY, CLERK
BY: s/ ELLA SURBER
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

| | | |
|---|---|---|
| United States of America<br>v.<br><br>Cole Carini<br>_Defendant(s)_ | ) ) ) ) ) ) ) | Case No. 1:20MJ84 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __June 3, 2020__ in the county of __Tazwell and Roanoke City__ in the __Western__ District of __Virginia__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. 1001(a)(2) | False, fictious, or fraudulent statement or representation to the US Government. |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_Complainant's signature_

Neil A. Schimke, Special Agent FBI
_Printed name and title_

+elephonically.
Sworn to before me ~~and signed in my presence~~.

Date: __06/04/2020__

_Judge's signature_

City and state: __Abingdon, Virginia__

Pamela Meade Sargent, U.S. Magistrate Judge
_Printed name and title_

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

IN THE MATTER OF THE ARREST OF:     **UNDER SEAL**
COLE CARINI

Case No. _____

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

1. I, Neil A. Schimke, a Special Agent with the Federal Bureau of Investigation, Richmond Division, Bristol Resident Agency, having been duly sworn, depose and state as follows:

### INTRODUCTION

2. I am an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations and to make arrests for the offenses enumerated in Section 2516 of Title 18, United States Code, including, but not limited to, matters involving the manufacturing and possession of explosives and explosive devices.

3. I have been employed as a Special Agent with the FBI for approximately 6 years. I am currently assigned to the Bristol Resident Agency (BRA) located in Bristol, Virginia. Prior to working in the BRA, I was assigned to the Laredo Resident Agency (LRA) located in Laredo, Texas, and was the coordinator for the Joint Terrorism Task Force (JTTF), an FBI Task Force, investigating international terrorism and domestic terrorism. While assigned the LRA I also investigated Mexican drug trafficking organizations, violent assaults against federal agents, kidnappings (domestic and international) and worked various counterintelligence investigations. Prior to working at the LRA I was assigned to the Orange County Resident Agency (OCRA) in Orange, California, where I was the case agent on multiple terrorism investigations, to include domestic terrorism investigations involving Weapons of Mass Destructions (WMD), explosive devices and international terrorism investigations of a Homegrown Violent Extremists (HVE). I have taken part in numerous federal, state, and local investigations concerning violations including international and domestic terrorism, document and identity fraud, financial fraud, cybercrimes, public corruption, controlled substance violations, kidnappings, violent crimes against children, espionage, and firearms offenses. I have deployed overseas for the FBI to investigate international terrorism in both the Philippines and Jordan.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show simply that there is sufficient probable cause for the requested warrant

and does not set forth all of my knowledge about this matter.

5. Based on the facts as set forth in this affidavit, there is probable cause to believe that the information described in Attachment A contains evidence that violations of 18 U.S.C. § 1001(a)(2) (statements or entries generally) have been committed by Cole Carini.

## STATEMENT OF PROBABLE CAUSE

6. On June 3, 2020, FBI Bristol was notified by the Virginia State Police (VSP) and Tazewell County Sheriff's Office (TCSO) that late the previous night, or early that morning, a white 23 year old male named Cole Carini (Carini) went to Clinch Valley Medical Center in Richlands, Virginia suffering from an amputated hand, amputated fingers on the opposite hand, and shrapnel wounds to the neck and throat. Carini was interviewed at the hospital by an officer of the Tazewell County Sheriff's Office and reported his injuries were the result of a lawn mower accident. Special Agent Bomb Tech (SABT) Micah Childers was told local law enforcement obtained a search warrant for the residence and identified a white, crystalline substance, as well as high concentration peroxides, and coffee filters at the subject's residence located at 190 Holy Road, Richlands, Virginia. Richlands, Virginia is in Tazewell County, which is in the Western Judicial District of Virginia.

7. FBI Bristol responded to the request for assistance at 190 Holy Road, a white two-story house, and identified a single-family residence that was the home of Carini. TCSO and VSP informed FBI Bristol that Carini was known to them as being someone who had previously made explosive devices and had been on probation for explosives violations up until September 2019.

8. Located adjacent to the front door of the residence, was a red minivan. The passenger rear door and door handle to the minivan had a red substance believed to be blood on it. The same red substance was observed inside the minivan. The same red substance was observed in drops at the front door of the residence and continued up the stairs to the second floor leading into a bedroom.

9. At the bedroom door, on the floor was a flesh colored substance that, based on my experience looked like a piece of human skin. Entering the bedroom, a footlocker was observed containing a plastic bottle with a red lid with a white powdery substance inside. The powder was tested, and the results indicated that the white powdery substance was Triacetone Triperoxide (TATP), which is a substance used in the creation of improvised explosive devices (IED). TATP is an explosive and is used in the creation of IEDs.

10. Beside the footlocker was a box containing rusty nails that, based on my knowledge of explosives, could be used as shrapnel in an explosive device. Adjacent to the nails on the floor was a blistered plastic container. The top of the container had been peeled back in a manner consistent with an explosion. Past the container was a table. The blinds, adjacent

2

to the table, had cut marks consistent with shrapnel having gone through them. Near the blinds was a t-shirt with the same cut marks. On the ceiling above the plastic container, was red substance believed to be blood splattered on the ceiling along with a skin colored chunk believed to be flesh. On the adjacent wall was more of the red substance believed to be blood splattered on the wall.

11. When walking the perimeter of the residence and looking for a potential test site for any IEDs, FBI Bristol, VSP and TCSO identified a red painted shed behind Carini's grandmother's residence, located at 174 Holy Road, Richlands, Virginia, which was next to next to Carini's residence. While inspecting the red shed from the railroad tracks that ran behind the shed, Agents and investigators identified several items that gave probable cause to obtain a search warrant for the shed including a surveillance system, PVC pipes, pieces of loose wires, empty chemical containers, extension cables, and a pit that appeared to have loose soil surrounding it consistent with the site of an explosion.

12. FBI Bristol, VSP and TCSO spoke with neighbors that had homes near the residence and the shed and they reported hearing bangs or pops going off several times a day. The neighbor closest to the shed told Agents and investigators he thought someone had bought Carini a rifle and he was shooting it inside the shed.

13. During a search of the shed, Agents and investigators discovered empty hydrogen peroxide containers and a hot plate cooking surface with a container filled with an unknown fluid. Next to the hot plate were coffee cups that had white, crystal-like residue inside them. Also located in the shed was a battery with wires attached to it, various electronic switches, coffee filters, and other types of chemical containers.

14. On the ground, a crumpled letter was found that contained statements that included (some parts of the letter were ripped away or not able to be read), "He casually walked through the shopping mall, his jacket concealed deadly objects." "He was doing it and was assured it must be done." "Even if he died this statement was worth it!" "He had…of tension that would come and go as he now approached the stage of hot cheerleaders." "He blended in with the audience, he began scanning his surroundings" "He noticed his two security guards who were standing side by side!" "This was an important observation." "A dead seriousness sank in as he realized that he was truly passing the point of no return!" "He decided I will not back down I will not be afraid of the consequences no matter what I will be heroic I will make a statement like Elliot Rodgers did he thought to himself."

15. Elliot Rodgers was a 23 year old mass killer (deceased) who killed six people and injured fourteen others by gunshot, stabbing and vehicle ramming in Isla Vista, California, near the campus of the University of California, Santa Barbara, and took his own life by gunshot on May 23, 2014.

16. FBI Roanoke Agents contacted Carini at the Roanoke Memorial Hospital located in Roanoke, Virginia. After being advised of the identities of the interviewing agents and the nature of the interview Carini was questioned about his injuries and the items located inside of his residence. When asked if he remembered what happened to put him in the hospital, Carini told the Agents he was mowing his yard and the mower flipped over in such a way that it drug his hands into the blades and because the blades were spinning so fast it acted like a bomb. Carini continued to talk about his history with making explosives and the legal trouble he had gotten into as a minor for making explosives. Carini was asked about the types of chemicals or explosives he had at his house to which he said he didn't know of anything that could explode. Carini was confronted about his story and Agents explained that a search warrant had been issued for the search of his property and explosives and the signs of the explosion that injured Carini had been observed by investigators.

17. Carini was asked again how he was injured, and he repeated his story about a lawnmower accident. On several other occasions during the interview, Carini was confronted with additional details of the explosion that had occurred in his room and each time Carini again repeated the lawnmower story.

18. An officer who responded to the scene at 190 Holy Road reported that there did not appear to be any area of the grass mowed, and that the grass at the property was around six inches high.

19. Based upon the report of the injuries, and my experience in these matters, the injuries to Carini are consistent with injuries caused by an explosion.

## CONCLUSION

20. Based on the aforementioned factual information and my training and experience in criminal investigations, I submit that probable cause exists to conclude that Cole Carini did knowingly and willingly lie to Special Agents of the FBI in violation of 18 U.S.C. § 1001(a)(2) (concerning statements or entries generally).

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on June 4, 2020, at Abingdon, Virginia.

*Neil A. Schimke*, Special Agent
Federal Bureau of Investigation

SWORN AND SUBSCRIBED TO BEFORE ME telephonically on 6/4/20.

4

THIS 4th DAY OF JUNE, 2020

_____
HONORABLE JUDGE PAMELA MEADE SARGENT
UNITED STATES DISTRICT COURT IN THE
WESTERN DISTRICT OF VIRGINIA